**NATIONAL WINE & SPIRITS CORPORATION, Appellant–Plaintiff,**

v.

**INDIANA ALCOHOL & TOBACCO COMMISSION and Southern Wine & Spirits of Indiana, Inc., Appellees–Defendants.**

No. 49A02–1006–PL–612.

Court of Appeals of Indiana.

March 2, 2011.

Steven M. Badger, Suzanna Hartzell–Baird, Bose McKinney & Evans, LLP, Attorneys for Appellant, National Wine & Spirits Corporation.

Byron E. Leet, pro hac vice, Rebeccca B. Howard, Wyatt, Tarrant & Combs, LLP, New Albany, IN, John B. Drummy,

Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellees, Southern Wine & Spirits of Indiana, Inc.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee, Indiana Alcohol and Tobacco Commission.

## OPINION

FRIEDLANDER, Judge.

National Wine & Spirits Corporation (National Wine) appeals from the trial court's order dismissing its petition for judicial review of the issuance of a wine and liquor permit to a competitor, Southern Wine & Spirits of Indiana, Inc. (Southern Wine). National Wine raises several issues for our review, which we consolidate and restate as follows: Did the trial court err by dismissing National Wine's petition for judicial review of the agency decision for lack of standing?

We affirm.

National Wine is an Indiana corporation doing business in several states as a liquor wholesaler. National Wine and Olinger Distributing Company (ODC) were the top two liquor wholesalers in Indiana. Southern Wine is a corporation organized under Indiana law with offices located in New Albany, Indiana. Southern Wine is a subsidiary of Southern Wine & Spirits of America, Inc., a Florida corporation doing business in twenty-nine states.

Southern Wine applied to the Indiana Alcohol & Tobacco Commission (IATC) for liquor and wine wholesaler permits in Indiana. The IATC conducted hearings on Southern Wine's applications and National Wine participated in the hearings as a public remonstrator. National Wine argued that Southern Wine should be denied liquor and wine wholesaler permits, alleging that Southern Wine and ODC were

engaged in anticompetitive coordination such that National Wine would suffer immediate harm to its supplier contracts and relationships if Southern Wine's permit applications were granted. National Wine sought permission from the IATC to be granted status as an intervening remonstrator, but that request was denied.

At its hearing on September 15, 2009, the IATC unanimously voted to recommend a denial of Southern Wine's permit application. The IATC later issued a notice of proposed action and right to public hearing in which the IATC expressed concerns about alleged trade practice violations by Southern Wine in other states including allegations of raiding competitors' employees and the failure to voluntarily disclose business interests, among other things. Prior to the public hearing, Southern Wine presented evidence in support of its permit applications and National Wine presented a written statement in opposition to Southern Wine's permit applications. After taking the matter under advisement, the IATC voted unanimously to grant Southern Wine's permit applications and issued written findings of fact and conclusions thereon.

On November 16, 2009, National Wine filed a verified petition for judicial review of the IATC's decision to issue the permits to Southern Wine. On December 14, 2009, the IATC filed a motion to dismiss the petition, followed by Southern Wine's motion to dismiss the petition. Ultimately, after holding a hearing on the motions, the trial court dismissed National Wine's petition for judicial review citing National Wine's lack of standing. National Wine now appeals.

National Wine argues that the trial court erred by denying its petition for judicial review on the basis of lack of standing and claims that it should have standing to challenge the IATC order be-

cause it was aggrieved and adversely affected by the order and that due process concerns support its ability to challenge the order. We disagree.

■ "The judicial doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's power." *Hauer v. BRDD of Indiana, Inc.*, 654 N.E.2d 316, 317 (Ind.Ct.App.1995). "The standing requirement is a limit on the court's jurisdiction which restrains the judiciary to resolving real controversies in which the complaining party has a demonstrable injury." *Schloss v. City of Indianapolis*, 553 N.E.2d 1204, 1206 (Ind.1990).

■ As for review of administrative decisions, "[j]udicial review is available only to those who have standing, who have exhausted administrative remedies, who have timely pursued review, and who have met any other requirements established by law." *Indiana Ass'n of Beverage Retailers, Inc. v. Indiana Alcohol & Tobacco Comm'n*, 836 N.E.2d 255, 257 (Ind.2005). Under the Indiana Administrative Orders and Procedures Act (AOPA), specific categories of persons have standing to obtain judicial review of an agency action. Ind. Code Ann. § 4–21.5–5–3(a) (West, Westlaw current through end of 2010 Second Regular Sess.). In pertinent part, AOPA provides that the following have standing to obtain judicial review of an agency action:

(1) A person to whom the agency action is specifically directed.

(2) A person who was a party to the agency proceedings that led to the agency action.

(3) A person eligible for standing under a law applicable to the agency action.

(4) A person otherwise aggrieved or adversely affected by the agency action. . . .

(b) A person has standing under subsection (a)(4) only if:

(1) the agency action has prejudiced or is likely to prejudice the interests of the person;

(2) the person;

(A) was eligible for an initial notice of an order or proceeding under this article, was not notified of the order or proceeding in substantial compliance with this article, and did not have actual notice of the order or proceeding before the last date in the proceeding that the person could object or otherwise intervene to contest the agency action; or

(B) was qualified to intervene to contest an agency action under IC 4–21.5–3–21(a), petitioned for intervention in the proceeding, and was denied party status;

(3) the person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(4) a judgment in favor of the person would substantially eliminate or redress the prejudice to the person caused or likely to be caused by the agency action.

*Id.*

Northern Wine petitioned the IATC to be granted intervening remonstrator status.

The [IATC] regulations plainly differentiate between "remonstrators," who are not parties, and "intervening remonstrators," who become parties. A remonstrator must become an "intervening remonstrator" in order to seek administrative review of the initial agency action. A "remonstrator" seeking to become an intervening remonstrator, and therefore a "party" is subject to the "aggrieved or adversely affected" requirement. A remonstrator who objects to the commission's actions must file a request for an appeal hearing within fifteen (15) days. 905 I.A.C. § 1–36–2(b). "The objections of any remonstrator shall also be accompanied by a petition for intervention stating facts which demonstrate that the petitioner will be aggrieved or adversely affected by the commission's action." *Id.* Upon receipt of a remonstrator's objection and petition for intervention "the commission shall consider whether the remonstrator has proven that he or she will be personally aggrieved or adversely affected if the application for permit is granted. . . . [An] 'intervening remonstrator' means a remonstrator that has been granted permission to intervene by the commission." *Id.* at § 1–36–2(d).

\*   \*   \*

Not every remonstrator is eligible to become an intervening remonstrator. [The IATC] correctly contends that a person must show direct injury to become a "party" to an administrative proceeding. In *Huffman v. Office of Environmental Adjudication,* 811 N.E.2d 806 (Ind.2004), we pointed out that "AOPA itself identifies who may pursue an administrative proceeding." *Id.* at 809. We noted that under section 3–7 of AOPA a person must be "aggrieved or adversely affected" in order to seek administrative review. *Id.* at 810 (citing I.C. § 4–21.5–3–7(a)(1)(B)). To seek judicial review a person must exhaust administrative remedies and therefore must have pursued administrative review. I.C. § 4–21.5–5–4. Thus, the standing requirement for judicial review is essentially congruent with the "aggrieved or adversely affected" requirement for administrative review. *Huffman* defined this as "harm to a legal interest, be it a pecuniary, property or personal interest." *Huffman,* 811 N.E.2d at 810. Persons who do not meet the standard may remonstrate, but are not entitled to push the process to

the next level by seeking administrative or judicial review.

*Indiana Ass'n of Beverage Retailers, Inc. v. Indiana Alcohol & Tobacco Com'n*, 836 N.E.2d at 258–59 (some internal citations omitted).

The appellant in the *Indiana Association of Beverage Retailers, Inc. v. Indiana Alcohol & Tobacco Comm'n* case claimed standing as a party, yet did not petition to become an intervening remonstrator and, thus, was found to lack standing for judicial review. National Wine, on the other hand, did unsuccessfully attempt to gain party status as an intervening remonstrator, and claims standing as an entity aggrieved or adversely affected by the IATC decision to grant a permit to Southern Wine.

■ When reviewing a trial court's dismissal for lack of standing, this court applies a *de novo* standard of review. *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984 (Ind.Ct.App.2003). The facts alleged in the complaint must be taken as true, and only where it appears that under no set of facts could the plaintiff be granted relief is dismissal appropriate. *Id.* A motion to dismiss tests the legal sufficiency of the claim, not the facts that support it. *In re Custody of G.J.*, 796 N.E.2d 756 (Ind.Ct.App.2003), *trans. denied.* A dismissal for lack of standing is appropriate only where it appears that the plaintiff cannot be granted relief under any set of facts. *Id.*

■ At the outset, we note that the statutory standing requirement for judicial review found in I.C. § 4–21.5–5–3(b) identifying those who have been aggrieved or adversely affected by the agency action is written in the conjunctive, i.e., all subsections must be met. Looking in particular at subsections (b)(2)(A) & (B), we observe that National Wine does not meet either

requirement. For one, National Wine received notice of the IATC orders and proceedings, and two, National Wine was not qualified to intervene to contest the agency action under Ind.Code Ann. § 4–21.5–3–21(a) (West, Westlaw current through end of 2010 Second Regular Sess.). Article 21.5 "does not apply to the formulation, issuance, or administrative review (but does apply to the judicial review and civil enforcement) of any of the following: ... (2) [d]eterminations by the alcohol and tobacco commission." Ind.Code Ann. § 4–21.5–2–6 (West, Westlaw current through end of 2010 Second Regular Sess.).

■ As we have previously stated, [t]he apparent legislative intent and purpose in including a statutory standing requirement in [AOPA] is to limit the persons who have standing as aggrieved or adversely affected persons; if a person does not have standing, the legislative prerogative is to deny the person review under the Act.

*Wine & Spirits Wholesalers of Indiana v. Indiana Alcoholic Beverage Comm'n*, 556 N.E.2d 17, 19 (Ind.Ct.App.1990). It was in the legislature's prerogative to deny National Wine standing to pursue review of IATC's actions regarding Southern Wine's applications.

■ Likewise, National Wine's argument that due process concerns entitle it to standing in this matter fails here. We have stated,

Of course, the legislature cannot deny review to a person who due process requires must have a right of review. For example, here, due process protection is afforded by IC 4–21.5–5–3(a)(1–3)[.]

*Id.* National Wine claims that its interest in its permits and the use and enjoyment of those permits is property for purposes of the due process clause. This argument

is flawed, however, because what National Wine actually seeks is to prevent a competitor from being granted a permit. As we said in the *Hauer* case,

> [the] asserted damages of loss of business and loss of market share are not rights protected by their permits.... [Their] permit ... does not include the right to be protected from competitors. [The permittee] has no property interest in the certificates of compliance issued to its competitors.

654 N.E.2d at 319. National Wine has failed to convince us that it is entitled, on the basis of due process concerns, to standing for judicial review of the IATC's decision to grant Southern Wine permits to do business in Indiana.

■ As noted by the trial court in its findings and conclusions thereon dismissing National Wine's petition on the basis of standing, and by the IATC in its brief, if, after issuing a permit, the IATC determines that a permittee has failed to disclose prohibited interests, is engaged in illegal trade practices, or has otherwise violated the terms of its permit or Indiana law, then the IATC is empowered to revoke or refuse to renew the permits issued. *See e.g.*, Ind.Code Ann. §§ 7.1–2–3–4 (general powers of commission); 7.1.2.3.7 (rules and regulations); 7.1–2–3–10 (investigations; revocation actions); 7.1–2–3–12 (searches and seizures); 7.1–2–3–19 (regulation of records); 7.1–2–3–22 (regulation of business relationships); and 7.1–2–3–31 (implied powers). Thus, National Wine has recourse to the IATC should its fears regarding Southern Wine's trade practices come to fruition.

Judgment affirmed.

MAY, J., and MATHIAS, J., concur.